Defendants' motion to compel arbitration.[5]  Further, we only remand Plaintiffs' allegations that the arbitration agreements, separate from the loan agreements, are not enforceable against them, on "'grounds as exist at law or in equity for the revocation of any contract.'" *Doctor's Assocs.*, 517 U.S. at 683 (quoting 9 U.S.C. § 2).

## CONCLUSION

For the above reasons, we **VACATE** the district court's order and **REMAND** for further consideration of Defendants' motion to compel arbitration in light of Plaintiffs' allegations that the arbitration agreements are unenforceable on grounds that the agreements would impose burdensome costs, deny statutory rights, and constitute an uninformed waiver of jury trial rights.

---

[5]It is not uncommon to obtain appellate review of a district court order denying a motion to compel arbitration brought pursuant to the FAA, prior to the district court's actual determination of the allegations giving rise to the order.  *See C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 912 F.2d 1563, 1566 (6th Cir. 1990) ("The district court concluded that the allegation of fraud in this case is one of 'fraud in the factum' and [thus] the case is one for the court and not the arbitrator to decide."); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 102 (3d Cir. 2000) ("[T]he District Court concluded that it could not order arbitration until it determined the validity of the underlying contract."); *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 852 (11th Cir. 1992) (finding that the district court's denial of a motion to compel arbitration "implicitly" ruled that the FAA proscribed compelling arbitration until the district court determined that the party resisting arbitration was "contractually obligated to submit to arbitration").

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0349P (6th Cir.)
File Name:  01a0349p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BEVERLY BURDEN, et al.,
        *Plaintiffs-Appellees,*

        *v.*                                    No. 00-5807

CHECK INTO CASH OF
KENTUCKY, LLC, et al.,
        *Defendants-Appellants,*

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No.  98-00170—Karl S. Forester, Chief District Judge.

Argued:  August 2, 2001

Decided and Filed:  October 1, 2001

Before:  CLAY and GILMAN, Circuit Judges; WISEMAN,
District Judge.

---

[*] The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

---

**COUNSEL**

**ARGUED:**  Barbara B. Edelman, DINSMORE & SHOHL, Lexington, Kentucky, for Appellants.  John O. Morgan, Jr., Lexington, Kentucky, for Appellees.  **ON BRIEF:** Barbara B. Edelman, Frank T. Becker, DINSMORE & SHOHL, Lexington, Kentucky, for Appellants.  John O. Morgan, Jr., Lexington, Kentucky, Richard A. Fisher, LOGAN, THOMPSON, MILLER, BILBO, THOMPSON & FISHER, Cleveland, Tennessee, Jack L. Block, SACHNOFF & WEAVER, Chicago, Illinois, for Appellees.

---

**OPINION**

---

CLAY, Circuit Judge.  Defendants, Check Into Cash of Kentucky, LLC, and W. Allan Jones, Jr., appeal from the district court's order denying Defendants' motion brought pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to compel arbitration of claims brought by Plaintiffs, Beverly Burden, Chapter 13 bankruptcy trustee for multiple estates, *et al.*, alleging violations of federal and Kentucky law arising from high-interest loan agreements between Plaintiffs and Defendants.  We **VACATE** the district court's order and **REMAND** for further consideration of Defendants' motion to compel arbitration in light of Plaintiffs' allegations that the arbitration agreements are unenforceable due to burdensome costs, denial of statutory rights, and uninformed waiver of jury trial rights.

---

an agreement to arbitrate."  *Sydnor v. Conseco Fin. Servs. Corp.*, 252 F.3d 302, 307 (4th Cir. 2001).[4]

We set out this precedent as an indication of the limited prospects such claims ultimately face.  Nevertheless, because these claims attack the enforceability of the arbitration clause separate from the underlying loan agreements, the claims are to be determined by a court, not an arbitrator.  When determining the enforceability of an arbitration agreement, a court "can investigate the existence of such grounds as exist at law or in equity for the revocation of any contract . . . However, the grounds for revocation must relate specifically to the arbitration clause and not just to the contract as a whole."  *Hooters of Am. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)(citing 9 U.S.C. § 2; *Prima Paint*, 388 U.S. at 402-04) (internal quotation marks omitted).

We note that the district court's order in this case, denying Defendants' motion to compel arbitration, was based only on the preliminary determination that Plaintiffs had alleged void *ab initio* contracts, without a subsequent determination that the contracts were actually void *ab initio*.  Allegations concerning the validity of an arbitration agreement "should ordinarily be decided in the trial court before final resolution of a motion to compel arbitration."  *Chastain*, 957 F.2d at 856 (citations omitted; emphasis omitted).  Accordingly, because the district court merely identified, and did not decide, Plaintiffs' allegations concerning the existence and enforceability of the arbitration agreements, we do not construe its order in this case to be a final resolution of

---

[4]Notably, however, the arbitration agreement in *Sydnor*, unlike the arbitration agreements in this case, contained an express waiver of jury trial provision.  *Sydnor v. Conseco Fin. Servs. Corp.*, 252 F.3d 302, 306 (4th Cir. 2001).

fraudulent scheme. Thus, in addition to the claim's failure to survive *Prima Paint*, it is also waived. *See Foster v. Barilow*, 6 F.3d 405, 408 (6th Cir. 1993).

Aside from fraud, Plaintiffs raise several alternative grounds on which the arbitration agreements should be found unenforceable. Plaintiffs highlight their particular position as unsophisticated consumers of limited education and means as a key factor in determining the enforceability of the arbitration agreements. These alternative grounds, specifically that arbitration in this case would impose burdensome costs, deny statutory rights, and constitute an uninformed waiver of jury trial rights, attack the enforceability of the arbitration clause itself, separate from the underlying loan agreements.

Under the FAA, generally available contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). We note, however, that Plaintiffs' claims as to the unenforceability of the arbitration agreements, separate from the loan agreements, goes against strong precedent. As to the potentially burdensome costs of arbitration, the party resisting arbitration has the burden of showing the likelihood that "arbitration would be prohibitively expensive." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 81 (2000). As to Plaintiffs' waiver of statutory class action rights, it is Plaintiffs' burden to show that Congress intended such rights to be nonwaivable, a burden that the Eleventh Circuit recently found had not been met under TILA. *Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814, 818 (11th Cir. 2001). As to the failure of the arbitration clause to include a jury waiver provision, "the loss of the right to a jury trial is a necessary and fairly obvious consequence of

## BACKGROUND

### Procedural History

Plaintiffs filed their original complaint in the district court on April 28, 1998, which was amended on May 5, 1998. On July 6, 1998, Plaintiffs filed their second amended complaint, alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.*, and several consumer protection statutes under Kentucky law. On June 2, 1998, Defendants moved to certify a question of law to the Kentucky Supreme Court: whether fees charged by a licensed check cashing company constituted interest subject to Kentucky usury laws. On August 25, 1998, the district court ordered Plaintiffs' action to be held in abeyance pending resolution of the question by the Kentucky Supreme Court.

On June 17, 1999, the Kentucky Supreme Court answered the certified question, finding that a check cashing company licensed under Kentucky Revised Statutes § 368 *et seq.*, which charges a "service fee" for accepting and deferring deposit on checks pursuant to agreements with the makers of the checks, thereby charges "interest" subject to the usury laws and disclosure provisions under § 360. *See White v. Check Holders, Inc.*, 996 S.W.2d 496, 500 (Ky. 1999).

On December 1, 1999, Plaintiffs moved to proceed as a class action pursuant to Fed. R. Civ. P. 23(c)(1). Defendants thereafter moved for an extension of time to respond to Plaintiffs' motion. On January 6, 2000, Defendants filed a motion under the FAA to compel arbitration of claims brought by Plaintiffs, and to stay litigation pending arbitration. The district court denied Defendants' motion on May 12, 2000, and it is from this order that Defendants now appeal.

## Facts

Plaintiff Burden is trustee for four bankruptcy estates in this case.  The individual Plaintiffs are residents of Lexington, Kentucky.  Defendant Check Into Cash, creditor of the bankruptcy estates and individual Plaintiffs in this case, is incorporated and does business in Kentucky.  Defendant W. Allan Jones, Jr., is a majority owner and managing officer of Check Into Cash.

Plaintiffs allege that Defendants have loaned money at usurious interest rates to hundreds of Kentucky consumers.  The consumers entered into "check cashing agreements" with Defendants (the "loan agreements").  Under the loan agreements, Defendants would provide a borrower with, for example, $200 in cash in exchange for a check in the amount of $238.  The loan agreement would refer to the $38 difference as a "finance charge," which, the agreement stated, "is deemed a service fee by Kentucky law and not interest. K.R.S. 368.100 (2)." (J.A. at 458.)

Defendants would then hold the check until the payment due date, which was normally two weeks after the date of the loan agreement.  These terms resulted in annual percentage rates of over 500%, which was stated in the loan agreement. If, as of the payment due date, the borrower lacked sufficient funds to cover the check, Defendants would permit the borrower to roll-over the debt by paying the "service fee," executing a replacement check in the same amount as the original check, and establishing a new payment due date two weeks from the roll-over date.  Plaintiffs allege that Defendants coerced borrowers into rolling over their debt by threatening otherwise to prosecute under the Kentucky "bad check" law.  *See* Ky. Rev. Stat. Ann. § 514.040 (Banks-Baldwin 1994).

The loan agreements at issue contained an arbitration clause, on the reverse side of the loan agreement, which read as follows:

sufficient to overcome the strong federal policy in favor of arbitration."

Specifically, for a complaint of fraud in the inducement to survive *Prima Paint*, the complaint must contain "a well-founded claim of fraud in the inducement of the arbitration clause itself, *standing apart from the whole agreement*, that would provide grounds for the revocation of the agreement to arbitrate."  *Arnold*, 920 F.2d at 1278 (emphasis in original).  The only aspect of Plaintiffs' fraud allegations which concerns the arbitration agreements, standing apart from the loan agreements, is the claim that Plaintiffs were not aware that the arbitration clauses had been added to the reverse side of the loan agreements in December of 1997.[2]  However, one who signs a contract is presumed to know its contents.  *Stout*, 228 F.3d at 715.

Plaintiffs' "fraudulent scheme" claim is unavailing because no aspect of the claim concerns the arbitration agreements, separate from the loan agreements.  That is, under *Prima Paint* and *Arnold*, Plaintiffs' fraudulent scheme claim does not constitute a claim of fraudulent inducement concerning the making of the arbitration agreements.[3]  Moreover, as noted by Defendants, Plaintiffs did not raise below the claim that the arbitration agreements were used in furtherance of a

---

[2]We note that the particular circumstances surrounding Defendants' presentation of the arbitration agreements in this case appear suspect, not because the arbitration clauses were placed on the back of the loan agreements without announcement, but rather because prior to such placement, Plaintiffs had regularly entered into otherwise identical loan agreements that had no arbitration clause.  Nevertheless, Plaintiffs offer no legal authority for the position that Defendants had a duty to inform them of their insertion of the arbitration clauses.

[3]Similarly, an additional claim of Plaintiffs, that the arbitration agreements are unenforceable because they were contained in contracts of adhesion, also does not concern the making of the arbitration agreements because the claim does not attack the arbitration clause, separate from the underlying loan agreements.

contract (including the arbitration clause) is for the arbitrator, while a challenge based on the lack of mutuality of the arbitration clause would be for the court." *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 868 (7th Cir. 1985) (citations omitted). "If the fraud relates to the arbitration clause itself, the court should adjudicate the fraud claim." *Ferro Corp. v. Garrison Indus.*, 142 F.3d 926, 933 (6th Cir. 1998) (quoting *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 539 (5th Cir.1992)). Because the district court relied on *Three Valleys* in denying Defendants' motion to compel arbitration, Plaintiffs' allegations concerning the making of the arbitration agreements, separate from the loan agreements, were not considered.

Although *C.B.S. Employees* declined to adopt the fraud in the factum/fraud in the inducement distinction when applying *Prima Paint*, nevertheless this Court remanded to the district court in that case allegations of fraud in the inducement of the arbitration agreement itself. *C.B.S. Employees* characterized the *Prima Paint* question as "whether CBS' fraud claim involves the making of the arbitration clause." *C.B.S. Employees*, 912 F.2d at 1568. Specifically, where "the plaintiff affirmatively pleads that the contract and the arbitration agreement included therein were procured through fraud, the court should determine whether the arbitration clause was used to further the fraudulent scheme." *Id.*

Plaintiffs in this case allege, under *C.B.S. Employees*, that the arbitration agreements were used to further a fraudulent scheme. However, Plaintiffs fail to identify, in connection with the alleged fraudulent scheme, any misrepresentation particular to the arbitration agreements, separate from the loan agreements. Allegations that the arbitration agreements furthered the fraudulent scheme are nevertheless arbitrable under *Prima Paint*. In *Arnold v. The Arnold Corp.*, 920 F.2d 1269, 1280-81 (6th Cir. 1990), this Court noted that under *Prima Paint*, pleading that an arbitration clause "was part of a broader fraudulent scheme . . . without more, is no longer

ARBITRATION: To pursue any claim, demand, dispute or cause of action (a "claim") arising under this Agreement or the transaction in connection with which this Agreement has been executed, the claimant must submit to the other party in writing an explanation of the claim and a demand that the claim be resolved by arbitration. If the other party does not respond to the submittal in writing within ten (10) days of its receipt, the claimant may pursue the claim either through arbitration or court action. If the other party responds to the submittal in writing within ten (10) days of its receipt, the claim must be submitted to binding arbitration in accordance with and pursuant to the Uniform Arbitration Act as enacted in the Commonwealth of Kentucky, KRS 417.045, et seq., as amended from time to time (the "Act"). The arbitration shall be conducted by one or more arbitrators selected by agreement between you and Check Into Cash but, if no agreement on the arbitrator[s] can be reached, by the Kentucky District Court for claims involving $4000 or less or the Kentucky Circuit Court, in either case, in the county where this Agreement was signed. The expenses of the arbitration, including attorney's fees, will be paid in accordance with the award issued by the arbitrator[s]. The finality and binding effect of the arbitration award shall be as set forth in the Act.

(J.A. at 451, 558.)

Kentucky's Uniform Arbitration Act provides that "[a] written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract." Ky. Rev. Stat. Ann. § 417.050 (Banks-Baldwin 1994).

Plaintiffs contend that prior to December of 1997, the loan agreements did not include an arbitration clause on the

reverse side of the loan agreement form. Plaintiffs further contend that Defendants never informed them of the addition of the arbitration clause, and that Plaintiffs only became aware of the clause when Defendants attached it to their motion to compel arbitration.

## DISCUSSION

This Court reviews *de novo* a district court's ruling on whether to compel arbitration pursuant to the FAA. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Under the FAA, a district court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate, and does not reach the merits of the parties' claims. *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997).

The district court concluded, primarily under *Three Valleys Municipal Water District v. E.F. Hutton & Co*, 925 F.2d 1136, 1139 (9th Cir. 1991), that Plaintiffs' allegations that the loan agreements containing the arbitration clause were void *ab initio*, must be determined by a court, not an arbitrator. Defendants contend that under *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), Plaintiffs' allegations of void loan agreements are to be determined by an arbitrator.

Under section 3 of the FAA, when an action is brought in federal court "upon any issue referable to arbitration under agreement in writing for such arbitration," the court must "stay the . . . action pending arbitration once it is satisfied that the issue is arbitrable under the agreement." *Prima Paint Corp.*, 388 U.S. at 400. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 169 (6th Cir. 1989) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Under *Prima Paint*, a court, rather than an arbitrator, may adjudicate a claim of fraud in the inducement only if the claim

character or essential terms of a proposed contract." Restatement (Second) of Contracts § 163 cmt. a (1979).

Plaintiffs' allegations primarily concern the substance of the loan agreements, which Plaintiffs then argue are "void" under § 288.991. However, unlike the *Three Valleys* line of cases, Plaintiffs allegations under § 288.991 do not concern their failure to assent to the loan agreements, and do not concern signatory power. Accordingly, because Plaintiffs' allegations under § 288.991 challenge the substance, rather than the existence, of the loan agreements, we vacate the district court's application of *Three Valleys* to those allegations.

Further, although Plaintiffs' allegations under § 288.420 do concern signatory power, in that Defendants were allegedly not licensed to enter into the loan agreements and thus, Plaintiffs contend, had no authority to enter into the loan agreements, we must nevertheless vacate the district court's application of *Three Valleys* to the allegations under § 288.420 as well. First, Plaintiffs have not addressed why *Three Valleys*, rather than *C.B.S. Employees*, should control the determination of their allegations. Second, Plaintiffs have not addressed the distinction between entering into a loan agreement with an unlicenced lender and not assenting to a loan agreement at all. Although § 288.420, like the *Three Valleys* line of cases, raises a question of signatory power, the question in this case is different in that the signatory issue arises only on the side of the parties moving for arbitration. Whether *Three Valleys* requires that parties resisting arbitration allege that they never agreed to any contract at all, is of no moment here because Plaintiffs have not addressed the issue.

Nevertheless, under *Prima Paint*, issues relating to the making of an arbitration agreement, separate from the underlying contract, are to be determined by the court, not the arbitrator. *Prima Paint*, 388 U.S. at 404. "So, for example, a challenge based on fraud in the inducement of the whole

110 (determining whether signatory had power to bind company); *Chastain*, 957 F.2d at 854 (determining whether signatory had power to bind family member); *Three Valleys*, 925 F.2d at 1140 (examining whether signatory had power to bind principals); *I.S. Joseph Co.*, 803 F.2d at 400 (determining whether assignee of signatory had power to enforce arbitration agreement); *Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 1000 (11th Cir. 1986) (finding that an allegation of fraud in the factum is an allegation of ineffective assent to the contract); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980) (determining whether signatory had power to bind company); *N&D Fashions, Inc. v. DHJ Indus., Inc.*, 548 F.2d 722, 729 (8th Cir. 1976) (examining whether signatory had power to enter into arbitration agreement).

Indeed, the *Three Valleys* decision, on which the district court primarily relied, offered the following explanation for limiting *Prima Paint* to challenges seeking to "avoid or rescind" an existing contract:

A contrary rule would lead to untenable results. Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature. Similarly, any citizen of Los Angeles could sign a contract on behalf of the city and Los Angeles would be required to submit to an arbitrator the question whether it was bound to the contract, even if its charter prevented it from engaging in any arbitration.

*Three Valleys*, 925 F.2d at 1140. Thus, the illustrations chosen by *Three Valleys* cast doubt on the position that challenges to the very existence of a contract, for purposes of distinguishing *Prima Paint*, include challenges from parties who intended to enter into a contract, but then subsequently discovered that certain terms of the contract may violate state law. That is, the *Three Valleys* line of cases requires more than an allegation of a statutory violation; the substance of the allegation must concern some "misrepresentation as to the

of fraud concerns the inducement of the arbitration clause itself, not the inducement of the contract generally. *Prima Paint*, 388 U.S. at 403-04. The Court in *Prima Paint* found that arbitration clauses were "separable" from the contracts in which they were included, and that "a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced from fraud." *Prima Paint*, 388 U.S. at 402. "If the arbitration clause is not at issue, then the arbitrator will decide challenges to the contract containing the arbitration clause." *C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 912 F.2d 1563, 1567 (6th Cir. 1990).

Several of our sister circuits have found that *Prima Paint* does not apply to allegations of nonexistent contracts. *See Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 590-91 (7th Cir. 2001); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir. 2000); *Three Valleys*, 925 F.2d at 1140; *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 855 (11th Cir. 1992); *I.S. Joseph Co. v. Mich. Sugar Co.*, 803 F.2d 396, 400 (8th Cir. 1986). The Third Circuit and the Ninth Circuit, respectively, have expressly found that *Prima Paint* applies to voidable, but not void, contracts. *See Sandvik*, 220 F.3d at 107; *Three Valleys*, 925 F.2d at 1140. In contrast, the Fifth Circuit has found that *Prima Paint* applies even to contracts that are "void from . . . inception." *See Lawrence v. Comprehensive Bus. Servs. Co.*, 833 F.2d 1159, 1162 (5th Cir. 1987).

The void/voidable distinction is relevant for *Prima Paint* analysis because a void contract, unlike a voidable contract, was never a contract at all.[1] Thus, a valid arbitration

---

[1] Section 163 of the Restatement provides that a "[i]f, because of a misrepresentation as to the character or essential terms of a proposed contract, a party does not know or have reasonable opportunity to know of its character or essential terms, then he neither knows nor has reason to know that the other party may infer from his conduct that he assents to that contract. In such a case there is no effective manifestation of assent

agreement "cannot arise out of a broader contract if no broader contract ever existed." *Sandvik*, 220 F.3d at 108. Accordingly, *Prima Paint* "presumes an underlying, existent, agreement." *Id*. at 106.

Although the reasoning of the Third, Seventh, Eighth, Ninth, and Eleventh Circuits is clear, this reasoning appears to be in tension with language in *C.B.S. Employees*, wherein this Court discounted the role of the fraud in the factum/fraud in the inducement distinction under *Prima Paint*. The Restatement provides that § 163, which addresses void contracts, concerns misrepresentations in "the 'factum' or the 'execution' rather than merely the 'inducement'" of the contract. Restatement (Second) of Contracts § 163 cmt. a (1979). Fraud in the factum or execution, "that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents," renders a contract void, while fraud in the inducement renders a contract merely voidable. *W.T. Langley v. FDIC*, 484 U.S. 86, 93-94 (1987) (citations omitted).

However, in C.B.S. Employees we observed that while the "fraud in the factum/fraud in the inducement distinction may offer a legitimate means of analy[sis]," the distinction "may more confound than clarify the dispositive issue and its resolution." *C.B.S. Employees*, 912 F.2d at 1566. Relying on *Prima Paint*, this Court then characterized the "central issue" as "whether CBS' claim of fraud relates to the making of the arbitration agreement. If it does, the court should adjudicate the fraud claim. If it does not, then the [FAA] requires that the fraud claim be decided by an arbitrator." *Id*.

We note that this Court in *C.B.S. Employees*, in not wanting to confound the dispositive question, may in fact have begged the dispositive question. That is, it is not clear that citation to

---

and no contract at all." Restatement (Second) of Contracts § 163 cmt. a (1979).

*Prima Paint*, without more, answers the void *ab initio* question, inasmuch as *Prima Paint* failed to address the void *ab initio* question. Indeed, if anything, we are inclined to find that *Prima Paint* supports, rather than prohibits, excluding nonexistent contracts from the severability doctrine, because an allegation of a void contract raises exactly the same question as an allegation of a fraudulently induced arbitration agreement: whether the arbitrator has any power at all. *Cf. Prima Paint*, 388 U.S. at 404 n.12 ("To immunize an arbitration agreement from judicial challenge on the ground of fraud in the inducement would be to elevate it over other forms of contract"). The Seventh Circuit recently captured the point in four words: "No contract, no power." *Sphere Drake Ins.*, 256 F.3d at 591. Nevertheless, we need not reach the question here, because the district court's application of *Three Valleys* in this case was erroneous and requires reconsideration.

The district court, relying on *Three Valleys*, found that because Plaintiffs had alleged that the loan agreements were void *ab initio*, those allegations were to be determined by the court, rather than an arbitrator. First, the above is a correct statement of Ninth Circuit law, but the district court failed to address how *Three Valleys* can be reconciled with *C.B.S. Employees*. Second, the district court erred when construing Plaintiffs' allegations under § 288.991 and § 288.420 — that any loan contract made in violation of § 288.991 shall be void, and that Defendants were not licensed to enter into the loan agreements — as allegations of void *ab initio* contracts under the *Three Valleys* line of cases.

Consistent with the nature of fraud in the factum allegations, courts have addressed questions of void *ab initio* contracts as questions of signatory power, not contract content. *See Aircraft Braking Sys. Corp. v. Local 856, Int'l Union*, 97 F.3d 155, 157-58 (6th Cir. 1996) (examining whether interim contract existed despite failure to ratify); *Sphere Drake Ins.*, 256 F.3d at 590-91 (determining whether signatory had power to bind company); *Sandvik*, 220 F.3d at