290 F.3d 631
 Patricia SNOWDEN, Plaintiff-Appellee, and
Karen Dowhite; Sheila Diane Dowhite; Lilistyne Dowhite; Cynthia Powell; Renee Wingo Roberts; Michael Smith, Sr., Plaintiffs,
v.
CHECKPOINT CHECK CASHING; Elite Financial Services, Incorporated, Defendants-Appellants, and
Unknown other Persons and Entities, Defendants.
 No. 01-2149.
 United States Court of Appeals, Fourth Circuit.
 Argued February 26, 2002.
 Decided May 15, 2002.
 
 COPYRIGHT MATERIAL OMITTED ARGUED: William Willis Carrier, III, Tydings & Rosenberg, L.L.P., Baltimore, Maryland, for Appellants. John Thomas Ward, Ward, Kershaw & Minton, P.A., Baltimore, Maryland, for Appellee. ON BRIEF: Ann M. Grillo, Tydings & Rosenberg, L.L.P., Baltimore, Maryland, for Appellants. Richard A. Fisher, Logan, Thompson, Miller, Bilbo, Thompson & Fisher, P.C., Cleveland, Tennessee, for Appellee.
 Before NIEMEYER, Circuit Judge, HAMILTON, Senior Circuit Judge, and JACKSON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 Vacated and remanded by published opinion. Senior Judge HAMILTON wrote the opinion, in which Judge NIEMEYER and Judge JACKSON joined.
 OPINION
 HAMILTON, Senior Circuit Judge.
 
 
 1
 In this interlocutory appeal, Elite Financial Services, Inc. (Elite) challenges the district court's denial of its motion to compel arbitration of, and stay proceedings with respect to, various federal and Maryland state law claims lodged against it by Patricia Snowden (Snowden), one of Elite's deferred deposit transaction customers. For reasons that follow, we vacate the district court's order denying Elite's motion to compel arbitration and stay proceedings and remand with instructions.
 
 I.
 
 2
 During the period between June 12, 1999 and February 7, 2000, Snowden, a Maryland citizen, engaged in twelve so-called "deferred deposit" transactions at stores owned and operated by Elite.[1] In a deferred deposit transaction, a customer tenders a check to the store that is cashed for a service fee with the understanding that the check will not be negotiated until some later, agreed upon time.
 
 
 3
 Of the twelve deferred deposit transactions in which Snowden engaged, only the November 4, 1999 agreement memorializing the sixth deferred deposit transaction contained an arbitration provision. From this point forward, we will refer to this agreement in its entirety as "the November 4, 1999 Agreement." Of relevance in the present appeal, the November 4, 1999 Agreement provided that Snowden and Elite (t/a CheckPoint) mutually agreed that either party had the right to elect to resolve by binding arbitration: [a]ny claim, dispute, or controversy (whether in contract, tort, or otherwise, whether pre-existing, present or future, and including statutory, common law, intentional tort, and equitable claims) arising from or relating to this Agreement or any check or instrument cashed by CheckPoint or fee charged by CheckPoint either prior or subsequent to the date of this Agreement....
 
 
 4
 (J.A. 54). Pursuant to the November 4, 1999 Agreement, the parties also mutually agreed that: (1) "[i]f arbitration is chosen, it will be conducted with the American Arbitration Association (the `AAA') pursuant to the AAA's Commercial Arbitration Rules"; (2) "THERE SHALL BE NO AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS ACTION BASIS"; (3) "AN ARBITRATION CAN ONLY DECIDE CHECKPOINT[']S OR YOUR CLAIM AND MAY NOT CONSOLIDATE OR JOIN THE CLAIMS OF OTHER PERSONS WHO MAY HAVE SIMILAR CLAIMS"; (4) any "participatory arbitration hearing ... will take place in the federal judicial district" of Snowden's residence; (5) Elite "will advance the first $50 of the filing and hearing fees for any claim in connection with the arbitration"; and (6) "[t]his arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (`FAA'), 9 U.S.C. Sections 1-16." Id. From this point forward, we will refer to all of the language in the November 4, 1999 Agreement pertaining to the subject of arbitration as the "Arbitration Agreement."
 
 
 5
 The substantive provisions of the FAA that are relevant in the present appeal are sections 2, 3, and 4. 9 U.S.C. §§ 2-4. Section 2 of the FAA provides that a written provision for arbitration "in any maritime transaction or a contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA requires the federal district court in which the action is brought, "upon any issue referable to arbitration under an agreement in writing for such arbitration," to "stay the trial of the action" pending arbitration once it is satisfied that the issue is arbitrable under the agreement. Id. § 3. Finally, section 4 directs the federal district court to order arbitration once it is satisfied that an agreement for arbitration has been made and has not been honored.
 
 
 6
 On June 26, 2000, Snowden, Karen Dowhite, Sheila Dowhite, Lilistyne Dowhite, Cynthia Powell, Renee Roberts, and Michael Smith, Sr. (collectively the Plaintiffs) filed a purported class action suit in the United States District Court for the District of Maryland against Elite.[2] The essential allegations of the complaint are: (1) that the Plaintiffs' deferred deposit transactions with Elite were loans; and (2) that the service fee charged by Elite for such transactions constituted interest. Based on these allegations, the Plaintiffs asserted various state and federal claims, including but not limited to claims alleging violation of the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-93, violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), violation of the Maryland Consumer Protection Act, Md.Code Ann., Commercial Law II § 13-408 (2000), and fraud under Maryland common law.
 
 
 7
 Elite subsequently moved to compel arbitration of all of Snowden's claims and to stay proceedings in the district court with respect to those claims, or in the alternative, to dismiss all of Snowden's claims (Elite's Motion to Compel Arbitration/Stay Proceedings).[3] The district court denied the motion without prejudice. In so doing, the district court operated under the belief that the issue of the enforceability of the Arbitration Agreement was inextricably intertwined with the issue of Snowden's suitability as a class representative. The district court stated its intention to revisit its decision to deny Elite's Motion to Compel Arbitration/Stay Proceedings at the time that it decided whether to certify the case as a class action.
 
 
 8
 Elite noted a timely appeal of the district court's denial of its Motion to Compel Arbitration/Stay Proceedings with respect to Snowden's claims. This is the appeal that is now before us.
 
 II.
 
 9
 Although Snowden makes no challenge to our appellate jurisdiction, the fact that the district court not only denied Elite's Motion to Compel Arbitration/Stay Proceedings without prejudice, but also stated its intention to revisit the ruling at a later time triggered alarm bells of a premature appeal for our consideration. Significantly, when our appellate jurisdiction is in doubt, we must sua sponte raise and address the matter. Lee v. Wetzel, 244 F.3d 370, 373 (5th Cir.2001) (federal appellate court must always be sure of its appellate jurisdiction and, if there is doubt, must address the jurisdictional issue sua sponte if necessary); Braswell Shipyards, Inc. v. Beazer East, Inc., 2 F.3d 1331, 1336 (4th Cir.1993) (federal appellate court is compelled to raise sua sponte the issue of whether the district court properly certified for immediate appeal a judgment entered on less than all of parties' claims, and if certification was unwarranted, then appeal must be dismissed).
 
 
 10
 Having considered the relevant statutory language, we are fully satisfied that we possess appellate jurisdiction. Under 9 U.S.C. § 16(a)(1)(A)-(B), the FAA expressly permits an immediate appellate challenge to a district court's denial of a motion to compel arbitration and stay proceedings pending the outcome of arbitration. Id. ("An appeal may be taken from — (1) an order — (A) refusing a stay of any action under section 3 of this title, (B) denying a petition under section 4 of this title to order arbitration to proceed...."); Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 202 (4th Cir.2000) (citing 9 U.S.C. § 16(a)(1)(B) and stating that § 16 "provides for immediate appeal of an order denying a § 4 petition to compel arbitration"). Here, the record unequivocally reflects that the district court entered an order denying Elite's Motion to Compel Arbitration/Stay Proceedings. Under the plain language of § 16(a)(1)(A)-(B) of the FAA, this circumstance is all that is necessary to grant us appellate jurisdiction in this case. We note that our sister circuits have reached the same conclusion in materially similar situations. Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 102-04 (3d Cir.2000) (holding district court's order denying motion to compel arbitration was immediately appealable under § 16(a) of the FAA, even though district court stated that it would have to determine whether there was an actual agreement to arbitrate); Koveleskie v. SBC Capital Markets, Inc., 167 F.3d 361, 363 (7th Cir.1999) (holding that, despite the district court's declaration of a need for discovery before it could decide arbitration issue, there was no doubt that motion to compel arbitration was denied, and was thus immediately appealable under § 16(a) of the FAA). Having satisfied ourselves that we possess appellate jurisdiction, we now proceed to consider the merits of Elite's appeal.
 
 III.
 
 11
 According to Elite, the Arbitration Agreement contractually obligates Snowden to arbitrate all of her claims in the present action, and the FAA required that the district court grant its Motion to Compel Arbitration/Stay Proceedings. In response, Snowden does not dispute that the Arbitration Agreement falls within the scope of the FAA. Nor does she dispute that her claims fall within the scope of the Arbitration Agreement. Rather, Snowden seeks to uphold the district court's denial of Elite's Motion to Compel Arbitration/Stay Proceedings by attacking the validity of the November 4, 1999 Agreement on two grounds and by attacking the validity of the Arbitration Agreement on three grounds.
 
 
 12
 Snowden first attacks the validity of the November 4, 1999 Agreement on the ground that the deferred deposit transaction memorialized by that agreement is void ab initio under Maryland law for imposition of a usurious rate of interest. Snowden's second attack on the validity of the November 4, 1999 Agreement rests upon her allegation that Maryland law required Elite to be state licensed as a money lender (which she alleges it was not) in order to engage in deferred deposit transactions. She argues that if the November 4, 1999 Agreement is void ab initio for either or both of these grounds, then the Arbitration Agreement, as part of the November 4, 1999 Agreement, is also void ab initio.
 
 
 13
 Neither of these two grounds is a viable basis upon which this court may affirm the district court's denial of Elite's Motion to Compel Arbitration/Stay Proceedings. The law is well settled in this circuit that, if a party seeks to avoid arbitration and/or a stay of federal court proceedings pending the outcome of arbitration by challenging the validity or enforceability of an arbitration provision on any grounds that "exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, the grounds "must relate specifically to the arbitration clause and not just to the contract as a whole." Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir.1999). See also Jeske v. Brooks, 875 F.2d 71, 75 (4th Cir.1989) (refusing to consider party's arguments that arbitration clause must be declared invalid on grounds that customer's agreement as a whole was invalid due to overreaching, unconscionability, fraud, and lack of consideration, because the alleged defects pertained to the entire contract, rather than specifically to the arbitration clause).
 
 
 14
 This rule is derived from the Supreme Court's opinion in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). In Prima Paint, the Supreme Court held that a claim of fraud in the inducement of the entire contract at issue was arbitrable under a broad arbitration clause. Id. at 403-04, 87 S.Ct. 1801. The Court held that section 4 of the FAA, and by implication section 3 of the FAA, limits a federal court's jurisdiction to challenges to the arbitration clause itself:
 
 
 15
 Under § 4, with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue." Accordingly, if the claim is fraud in the inducement of the arbitration clause itself — an issue which goes to the "making" of the agreement to arbitrate — the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.... We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.
 
 
 16
 Id. at 403-04, 87 S.Ct. 1801 (internal footnotes omitted). This holding in Prima Paint has come to be known as the severability doctrine. See, e.g., Sandvik AB, 220 F.3d at 105.
 
 
 17
 Notably, the severability doctrine has been held not to apply when the party seeking to avoid arbitration contends that it never assented in the first place to the contract containing the arbitration provision. See, e.g., Sphere Drake Ins., Ltd. v. All Am. Ins. Co., 256 F.3d 587, 590-91 (7th Cir.2001) (district court should determine whether signatory had power to bind company to contract containing arbitration agreement); Sandvik AB, 220 F.3d at 110 (district court should determine whether signatory had power to bind company to contract containing arbitration agreement); Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 854 (11th Cir.1992) (district court should determine whether signatory had power to bind family member to contract containing arbitration agreement). The federal appellate courts reaching these holdings logically reasoned that if a party never assented to the overall contract containing the arbitration provision, then the party never assented to the arbitration provision. Id. The question of whether a valid agreement to arbitrate exists being an issue for the district court, the district court is required to decide the assent issue even though the issue goes to the making of the entire agreement. Sphere Drake Ins., Ltd., 256 F.3d at 590-91; Sandvik AB, 220 F.3d at 107; Chastain, 957 F.2d at 854.
 
 
 18
 Here, Snowden's allegations of usurious rates of interest and non-licensure do not relate specifically to the Arbitration Agreement. Neither do they underlie a claim that Snowden failed to assent to the terms of the November 4, 1999 Agreement. Therefore, they cannot serve as a basis to uphold the district court's denial of Elite's Motion to Compel Arbitration/Stay Proceedings.
 
 
 19
 We note that our conclusion is squarely in accord with the Sixth Circuit's recent and well-reasoned decision in Burden v. Check Into Cash of Kentucky, LLC, 267 F.3d 483 (6th Cir.2001). In that case, the Sixth Circuit rejected the same void ab initio arguments that Snowden presses in the present appeal. Specifically, the Sixth Circuit held that the plaintiffs in that case (who had brought the action against a check cashing company and its majority owner alleging violations of federal and Kentucky law arising from deferred deposit transactions almost identical to those at issue in the present case) could not avoid arbitration by reason of their allegations that the customer agreements containing the arbitration provisions were void ab initio under Kentucky law for requiring usurious rates of interest and/or because the defendant company did not hold a Kentucky license to lend money.[4] Id. at 489. In so doing, the Sixth Circuit first observed that the plaintiffs' allegations concerned the substance of the entire customer agreements rather than their failure to assent to such agreements or their own lack of signatory power. Id. at 490. Second, the court observed a distinction between entering into a loan agreement with an unlicensed lender and not assenting to a loan agreement at all. Id. Based upon these observations, the court vacated the district court's denial of the defendants' motion to compel arbitration and remanded the case to the district court for consideration in the first instance of the plaintiffs' other allegations that specifically challenged the enforceability of the arbitration provisions. Id. at 493. In sum, Burden supports our conclusion that Snowden's allegations of usurious rates of interest and non-licensure cannot serve as a basis to uphold the district court's denial of Elite's Motion to Compel Arbitration/Stay Proceedings.
 
 
 20
 We next address Snowden's allegations that pertain specifically to the Arbitration Agreement. In this regard, Snowden first argues that the Arbitration Agreement itself is unenforceable because it does not include an express jury waiver provision. Without an express jury waiver provision, Snowden reasons that she could not have knowingly and voluntarily waived her Seventh Amendment right to a jury trial. Common sense dictates that we reject this argument. "[T]he loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." Sydnor v. Conseco Fin. Servs. Corp., 252 F.3d 302, 307 (4th Cir.2001) (internal quotation marks omitted).
 
 
 21
 We also reject Snowden's argument that the Arbitration Agreement is unenforceable as unconscionable because without the class action vehicle, she will be unable to maintain her legal representation given the small amount of her individual damages. Snowden's argument is unfounded in light of: (1) the fact that attorney's fees are recoverable by a prevailing plaintiff in a TILA action, 15 U.S.C. § 1640(a)(3), and a civil RICO action, 18 U.S.C. § 1962(c); and (2) the fact that, although the Arbitration Agreement provides that each party shall bear the expense of their respective attorneys' fees regardless of which party prevails in the arbitration, such provision expressly does not apply if it is "inconsistent with the applicable law...." (J.A. 54). Johnson v. West Suburban Bank, 225 F.3d 366, 374 (3d Cir.2000), cert. denied sub nom. Johnson v. Tele-Cash, Inc., 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001) ("Attorneys' fees are recoverable under the TILA, see 15 U.S.C. § 1640(a)(3), and would therefore appear to be recoverable in arbitration, as arbitrators possess the power to fashion the same relief as courts.").
 
 
 22
 Finally, we reject as meritless Snowden's unsupported argument that forcing consumers like her to arbitrate consumer protection claims against companies like Elite is against public policy relating to consumer protection. Congress enacted the FAA in 1925 in order "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Snowden has presented no authority or evidence establishing that the arbitral forum contemplated by the FAA and provided in the Arbitration Agreement is inconsistent with public policy relating to consumer protection. Indeed, we have recognized the arbitral forum specified by the Arbitration Agreement as one provided by a reputable arbitration organization. Hooters, 173 F.3d at 939. We also note that the Arbitration Agreement places no limitations upon the substantive remedies available to Snowden in arbitration. In sum, we can discern no violation of public policy relating to consumer protection by requiring Snowden to resolve her claims against Elite in the arbitral forum.
 
 
 23
 As there is no dispute that Snowden's claims fall within the scope of the Arbitration Agreement or that the Arbitration Agreement falls within the scope of the FAA, and Snowden has failed to show sufficient justification for this court to hold the Arbitration Agreement unenforceable, we vacate the district court's order denying Elite's Motion to Compel Arbitration/Stay Proceedings and remand with instructions to grant the motion to the extent it seeks to compel arbitration of Snowden's claims and stay proceedings with respect thereto pending the outcome of such arbitration.
 
 
 24
 
 VACATED AND REMANDED.
 
 
 
 
 Notes:
 
 
 [1]
 Elite operated the stores under the trade name "CheckPoint Check Cashing" (CheckPoint)
 
 
 [2]
 The Plaintiffs also named CheckPoint as a defendant. As previously explained, CheckPoint is merely a trade name for Elite. As such, Check Point is not a separate legal entity capable of being suedSee Bauer v. Pounds, 61 Conn.App. 29, 762 A.2d 499, 503 (2000) ("It appears well settled that the use of a fictitious or assumed business name does not create a separate legal entity and that the designation d/b/a is merely descriptive of the person or corporation who does business under some other name.") (internal quotation marks, ellipses, and alterations omitted); American Express Travel Related Servs. Co. v. Berlye, 202 Ga.App. 358, 414 S.E.2d 499, 501 (1991) ("The use of d/b/a or `doing business as' to associate a tradename with the corporation using it does not create a legal entity separate from the corporation but is merely descriptive of the corporation."); 8 Fletcher Cyclopedia of the Law of Private Corporations § 3831 (revised ed. 1992 & Supp.1999) ("[U]sing d/b/a or `doing business as' to associate an assumed or fictitious name with a corporation does not, without more, create a separate legal entity different from the corporation."). For purposes of this opinion, we treat Elite as the sole defendant.
 
 
 [3]
 According to the district court, of all of the Plaintiffs, only Snowden had executed an agreement with Elite containing an arbitration provision. Moreover, we note that Elite's Motion to Compel Arbitration/Stay Proceedings did not seek to stay any proceedings with respect to any claims by the other plaintiffs
 
 
 [4]
 The district court inBurden had denied the defendants' motion to compel arbitration solely on the ground that the plaintiffs had alleged void ab initio contracts. Id. at 493.