No. 15-0128 -- *Nationstar Mortgage, LLC v. Adam West and Bethany West*

**Workman, Justice, dissenting**

**FILED**
**April 7, 2016**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

In reversing the well-reasoned decision of the circuit court, the majority destroys consumer rights through its overly harsh analysis of the Wests' unconscionability contract defense. The real question in this case is whether the Wests met their burden under *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), to demonstrate that they face such "high costs" if compelled to arbitrate their claims against Nationstar that they are effectively precluded from vindicating their rights in the arbitral forum. *Id*. at 90. The record is clear that the Wests have met their burden of showing the likelihood of incurring such costs, and I would invalidate the arbitration agreement as "prohibitively expensive." *Id.* at 92. I therefore respectfully dissent.

This case presents just another example of the troubling issues surrounding arbitration clauses inserted into form contracts in consumer transactions by powerful out-of-state corporations.[1] As Justice Ginsburg recently commented, the precedent of the

---

[1]*See* Melissa T. Lonegrass, *Finding Room for Fairness in Formalism-the Sliding Scale Approach to Unconscionability*, 44 Loy. U. Chi. L.J. 1, 3 (2012) ("Standard forms are ubiquitous, but hardly innocuous. In fact, form contracts are rife with the potential for abuse. Their nature and universality permit drafters to impose any number of onerous terms on unwary consumers, including arbitration agreements, class action waivers, liquidated damages provisions, warranty disclaimers, exculpatory clauses, and choice-of-law provisions. Form contracts even empower drafters to shift risks at will, often without warning, through unilateral change-of-terms clauses--an increasingly common favorite of credit card issuers, banks, utility companies, and a host of other merchants and service (continued . . .)

1

United States Supreme Court has "predictably resulted in the deprivation of consumers' rights to seek redress for losses, and, turning the coin, they have insulated powerful economic interests from liability for violations of consumer-protection laws." *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 477 (2015) (Ginsburg, J., dissenting); *see e.g.*, Judith Resnick, *Diffusing Disputes: The Public in the Private of Arbitration, the Private in Courts, and the Erasure of Rights*, 124 Yale L.J. 2804, 2804 (2015) ("Although hundreds of millions of consumers and employees are obliged to use arbitration as their remedy, almost none do so -- rendering arbitration not a vindication but an unconstitutional evisceration of statutory and common law rights."). Because "consumers lack bargaining power to change the terms of consumer adhesion contracts *ex ante*, '[t]he providers [have] won the power to impose a mandatory, no-opt-out system in their own private "courts" designed to preclude aggregate litigation.'" DIRECTV, 136 S.Ct. at 477 (Ginsburg, J., dissenting) (quoting Resnik, *Fairness in Numbers: A Comment on AT&T v. Concepcion, Wal-Mart v. Dukes, and Turner v. Rogers,* 125 Harv. L. Rev. 78, 133 (2011)).

Although the Supreme Court has stressed that federal policy under the Federal Arbitration Act, 9 United States Code § 2 (West 2016), favors the enforcement of

---

providers. Although essential to the American economy, form contracts expose consumers to a parade of one-sided, risk- and rights-shifting provisions.") (footnotes omitted).

valid arbitration agreements,[2] the Supreme Court has been equally clear that a party can be forced into arbitration only if he or she has in fact entered into a valid, enforceable contract waiving his or her right to a judicial forum. *AT&T Tech., Inc. v. Commc'n Workers of Am.,* 475 U.S. 643, 648 (1986). Whether the parties actually agreed to arbitrate is determined under ordinary state-law contract principles. *Penn v. Ryan's Family Steak Houses, Inc.,* 269 F.3d 753, 758-59 (7th Cir. 2001). An arbitration clause may be declared unenforceable upon the same grounds at law or equity for the revocation of any contract. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Therefore, a traditional unconscionability contract defense still exists because the FAA's saving clause permits it. *Id*.

Consistent with these principles, this Court still has the authority to find an arbitration clause invalid due to unconscionability. "[W]e analyze unconscionability in terms of two component parts: procedural unconscionability and substantive unconscionability." *Brown v. Genesis Healthcare Corp*., 228 W.Va. 646, 681, 724 S.E.2d 250, 285 (2011) *("Brown I")*. Substantive unconscionability goes to the specific terms of the contract and procedural unconscionability concerns the formation of the agreement. While the presence of both procedural and substantive problems is necessary for an ultimate finding of unconscionability, such a finding may be appropriate when a contract

---

[2] "[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Inf. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989).

presents pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa. To be unenforceable, a contract term must -- "at least in some small measure" -- be both procedurally and substantively unconscionable. *Id*. at Syl. Pt. 20; *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 289, 737 S.E.2d 550, 558 (2012).

The United States Court of Appeals for the Fourth Circuit explained the particular characteristics of both procedural and substantive unconscionability in *Carlson v. General Motors Corp.,* 883 F.2d 287 (4th Cir. 1989):

> Substantive unconscionability involves those one-sided terms of a contract from which a party seeks relief (for instance, "I have the right to cut off one of your child's fingers for each day you are in default"), while procedural unconscionability deals with the process of making a contract -- "bargaining naughtiness" (for instance, "Just sign here; the small print on the back is only our standard form"). Each of these branches of unconscionability has common-law cousins; procedural unconscionability looks much like fraud or duress in contract formation, and substantive unconscionability reminds us of contracts or clauses contrary to public policy or illegal.

*Id.* at 296 n.12 (quoting James J. White & Robert S. Summers, *Uniform Commercial Code* § 4-3, at 186 (3d ed. 1988)).

Our substantive/procedural analysis is more of a sliding scale than a true dichotomy. The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to establish unconscionability. Syl. Pt. 9, *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 729 S.E.2d 217 (2012) (*Brown II). See* Lonegrass, *Finding Room for Fairness in Formalism-the Sliding Scale Approach to*

4

*Unconscionability*, 44 Loy. U. Chi. L.J. 1, 12 ("[T]he sliding scale approach does not require that procedural and substantive unconscionability each be present in any particular degree; rather, a relatively large quantum of one type of unconscionability can offset a relatively small quantum of the other. Thus, under the sliding scale approach, the two prongs are viewed in tandem, permitting the court to make a finding of unconscionability if the overall weight of the facts and circumstances favors intervention.") (footnotes omitted); *Cordova v. World Fin. Corp. of N.M.*, 208 P.3d 901, 908 (N.M. 2009) ("The more substantively oppressive a contract term, the less procedural unconscionability may be required for a court to conclude the offending term is unenforceable.").

As discussed below, taken together, the oppressive and one-sided substantive provisions of the arbitration clause at issue in the instant case and the inequality of bargaining power between the parties render the arbitration clause in the Wests' loan agreement unconscionable. Therefore, the circuit court appropriately applied traditional tools of our State contract law when it held the arbitration clause was unenforceable.

**A. The Arbitration Clause is Procedurally Unconscionable**

There can be no reasonable disagreement that the contract between the Wests and Nationstar was a contract of adhesion at the time of formation, but the majority is correct in determining that our analysis does not end here. "[T]he times in

5

which consumer contracts were anything other than adhesive are long past." [3] *Concepcion*, 563 U.S. at 346-47. While adhesion can be a factor when arguing unconscionability, the mere lack of a meaningful choice and negotiation between the parties will not, standing alone, establish unconscionability.[4]

The majority goes on to address the elements of procedural unconscionability pursuant to *Brown I*.[5] While I agree that the omission of an "opt out"

---

[3] "Experts have long acknowledged that consumers do not read form contracts before signing them, and have recently come to better understand the more fundamental, and sobering, truths about standard contracts: consumers who actually read consumer contracts do not understand them, either because they lack the requisite legal training, or worse, basic literacy skills." Lonegrass, *supra* at 3-4 (footnotes omitted).

[4] Admittedly, the United States Supreme Court in *Concepcion* "did not automatically entitle defendants to arbitration, but it did make it easier for defendants to enforce their contract provisions." Megan Barnett, *There Is Still Hope for the Little Guy: Unconscionability Is Still A Defense Against Arbitration Clauses Despite AT&T Mobility v. Concepcion*, 33 Whittier L. Rev. 651, 664 (2012).

[5] In syllabus point seventeen of *Brown I*, we held:

> Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.

(continued . . .)

6

provision is not in itself sufficient to establish procedural unconscionability, the *Brown I* factors, taken as a whole, weigh in favor of procedural unconscionability in this case.

It is clear that the Wests had no reasonable opportunity to understand the terms of the contract they were signing. They had no opportunity to review the arbitration rider prior to the closing; the arbitration rider was contained in a stack of papers prepared by and provided by Nationstar; and the Wests were unaware they signed an arbitration agreement. Furthermore, the documents Nationstar provided to the Wests did not contain information about the American Arbitration Association (AAA) rules and protocols that governed commercial arbitration or the costs associated with filing a claim.[6]

Finally, the bargaining power between Nationstar and the Wests was unquestionably unequal in that the Wests are relatively unsophisticated consumers contracting with corporate defendants who drafted the arbitration clause and included it as boilerplate language in the loan agreement. Simply put, there was no "'real and

---

228 W.Va. 646, 724 S.E.2d 250.

[6] I recognize that "even the most diligent consumer who on his or her own initiative obtains the rules from the AAA and reads them would have a most difficult time accurately assessing his or her exposure." *DeVito v. Autos Direct Online, Inc.*, 37 N.E.3d 194, 202-03 (Ohio 2015). A review of the 2013 amendments to the AAA's rules reflects a set of elaborate rules and procedures for commercial arbitration (the "Commercial Arbitration Rules and Mediation Procedures"), and a separate set of more streamline rules and procedures for consumer disputes (the "Consumer Arbitration Rules").

voluntary meeting of the minds' of the parties at the time that the contract was executed." *Brown I*, 228 W.Va. at 681, 724 S.E.2d at 285.

Further, the arbitration provision is substantively unconscionable because of the prohibitive costs the Wests would incur in filing an action for commercial arbitration. When these costs are coupled with the total lack of mutuality, the sliding scale is tipped heavily in favor of complete unconscionability. *See* 1 E. Allan Farnsworth, *Farnsworth on Contracts* § 4.28, at 585 (3d ed. 2004) ("A court will weigh all elements of both substantive and procedural unconscionability and may conclude that the contract is unconscionable because of the overall imbalance.").

### B. The Arbitration Clause is Substantively Unconscionable

The Wests contend they are facing paying more than $5,750 (and possibly well over $14,700) to arbitrate their claims against Nationstar under the AAA Commercial Rules and Mediation Procedures. It is difficult to ascertain the precise costs of the proceedings because one or three arbitrators may be appointed to hear the matter.[7] In addition, the AAA may require the parties to deposit in advance of the hearing such sums as it deems necessary to cover the expense of the arbitration. AAA Comm. R. 56(a).

---

[7] *See* AAA Comm. R. 16(a) ("If the arbitration agreement does not specify the number of arbitrators, the dispute shall be heard and determined by one arbitrator, unless the AAA, in its discretion, directs that three arbitrators be appointed. A party may request three arbitrators in the Demand or Answer, which request the AAA will consider in exercising its discretion regarding the number of arbitrators appointed to the dispute.").

Following the hearing, the Wests could incur thousands more in shared expenses for the arbitrator and other costs.[8] The prospect of incurring these onerous costs and fees effectively precludes the Wests' opportunity to vindicate their consumer rights.

In the landmark case of *Green Tree*, the United States Supreme Court directly addressed the question of whether arbitration fees potentially incurred by consumers could invalidate an arbitration clause. In *Green Tree*, a mobile home buyer brought a class-action suit against the lender for alleged Truth in Lending Act ("TILA") and Equal Credit Opportunity Act ("ECOA") violations in the loan agreement, which required that all disputes arising from or related to the contract were to be resolved by binding arbitration. 531 U.S. at 83. The Supreme Court reversed the Eleventh Circuit's holding that the arbitration agreement's silence as to the filing fees, arbitrators' costs, and other arbitration expenses had rendered the arbitration provision unenforceable because it exposed the buyer to potentially steep arbitration costs. *Id.* at 84. Acknowledging that the *Green Tree* parties had provided no detail of the expected arbitration fees and costs, the Supreme Court observed that while "the existence of large arbitration costs could preclude a litigant" of limited resources from effectively pursuing his or her claims in an arbitral forum, "[t]he 'risk' that [the buyer] will be saddled with prohibitive costs is too

---

[8]*See* AAA Comm. R. 54 ("The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.").

speculative to justify the invalidation of an arbitration agreement." *Id.* at 92. Essentially, *Green Tree* placed upon the party asserting the prohibitive expense the burden of showing the likelihood of incurring such costs. *See Bradford v. Rockwell Semiconductor Sys., Inc.,* 238 F.3d 549, 556 (4th Cir. 2001) ("[A]ppropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, *i.e.,* a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims"); *Burden v. Check into Cash, LLC,* 267 F.3d 483, 492 (6th Cir. 2001) (finding *Green Tree* requires party resisting arbitration to show likelihood of prohibitive expenses).

Consistent with *Green Tree*, the court in *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362 (N.C. 2008), found an arbitration clause substantively unconscionable because the collective effect of its provisions would have precluded the plaintiffs from "'vindicating [their] . . . rights in the arbitral forum.'" *Id*. at 371 (quoting *Green Tree,* 531 U.S. at 90). In *Tillman*, the court was persuaded by the prohibitively high costs the borrowers would face to bring their claims in the commercial arbitration setting.

> In terms of ability to pay, the evidence of plaintiffs' limited financial means is uncontested. Plaintiffs live paycheck to paycheck and usually have very little money left in their bank accounts after paying their monthly bills. The arbitration clause specifies that AAA will administer any arbitration

between the parties to the loan agreement, and evidence in the record indicates that the average daily rate of AAA arbitrator compensation in North Carolina is $1,225.00. According to the arbitration clause, when an arbitration lasts more than eight hours, the loser will be charged with costs. Moreover, the clause provides for a *de novo* appeal before a panel of three arbitrators, and again, the loser pays the costs. For example, at the average rate, a two-day appeal would cost the losing party $7,350.00 in arbitrator fees. Plaintiffs simply do not have the resources to risk facing these kinds of fees.

*Id.* at 371; *but see Torrence v. Nationwide Budget Fin.*, 753 S.E.2d 802, 812 (N.C. App. 2014) (recognizing *Tillman's* substantive unconscionability analysis is undermined by "[b]oth *Concepcion* and *Italian Colors*[9] [which] hold that a class action waiver does not render an arbitration agreement unconscionable.").

In the instant case, the Wests do not have the financial resources to risk losing sky-high commercial arbitration fees in their fight to save their home. The majority belittles the Wests' legitimate concerns as "wholly speculative." However, it would be more judicious for this Court to reject Nationstar's argument—that simply because the arbitrator *might* order it to pay the costs of arbitration, the clause can be rescued—as wholly speculative.

The circuit court correctly determined that the threat of oppressive costs rendered the arbitration clause unconscionable and, therefore, unenforceable. Consequently, I would affirm the circuit court's ruling.

---

[9] *American Express Co. v. Italian Colors Rest.*, 133 S.Ct. 2304 (2013).

11