894 So.2d 860 (2005)
John CARDEGNA, et al., Petitioners,
v.
BUCKEYE CHECK CASHING, INC., Respondent.
No. SC02-2161.
Supreme Court of Florida.
January 20, 2005.
E. Clayton Yates, Fort Pierce, FL, F. Paul Bland, Jr., Washington, D.C., Christopher C. Casper of James, Hoyer, Newcomer and Smiljanich, P.A., Tampa, FL, and Richard A. Fisher, Cleveland, TN, for Petitioner.
*861 John R. Hart of Carlton Fields, P.A., West Palm Beach, FL, Amy L. Brown, James P. Wehner of Squire, Sanders and Dempsey, LLP, Washington, D.C. and Pierre H. Bergeron of Squire, Sanders and Dempsey, LLP, Cincinnati, OH, for Respondent.
Deborah M. Zuckerman, AARP Foundation, Washington, D.C., and Lynn Drysdale, Florida Legal Services, Inc., Jacksonville, FL on behalf of AARP, Consumer Federation of America and National Consumer Law Center; and Daniel S. Pearson, Lenore C. Smith, and Scott B. Newman of Holland and Knight, LLP, Miami, FL on behalf of The Check Cashing Store, Inc., for Amici Curiae.
ANSTEAD, J.
We have for review Buckeye Check Cashing, Inc. v. Cardegna, 824 So.2d 228 (Fla. 4th DCA 2002), which expressly and directly conflicts with the decision in Fast-Funding the Company, Inc. v. Betts, 758 So.2d 1143 (Fla. 5th DCA 2000). We have jurisdiction. See art. V, 3(b)(3), Fla. Const. For the reasons expressed below, we quash the decision of the Fourth District Court of Appeal in Buckeye, and approve the decision of the Fifth District Court of Appeal in FastFunding. We hold that an arbitration provision contained in a contract which is void under Florida law cannot be separately enforced while there is a claim pending in a Florida trial court that the contract containing the arbitration provision is itself illegal and void ab initio.

FACTUAL BACKGROUND
The relevant facts in Buckeye are summarized by the district court's opinion:
Appellant, Buckeye Check Cashing, Inc., timely appeals from an order that denied its motion to compel arbitration and to stay proceedings. We reverse and remand.
Appellees brought a class action lawsuit against Appellant. They alleged that Appellant made illegal usurious loans disguised as check cashing transactions in violation of various Florida Statutes. In response, Appellant filed a motion to compel arbitration and to stay proceedings, pursuant to the provisions for arbitration contained in the deferred deposit and disclosure agreement signed by Appellees. The agreement provided in pertinent part:

Arbitration provisions. Any claim, dispute, or controversy (whether in contract, tort or otherwise, whether pre-existing, present, or future, and including statutory, common law, intentional tort, and equitable claims) arising from or relating to this Agreement ... or the validity, enforceability, or scope of this Arbitration Provision or the entire Agreement (collectively "Claim"), shall be resolved, upon the election of you or us or said third-parties, by binding arbitration pursuant to this Arbitration Provision.... This arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1-16.
Appellees filed a memorandum in opposition to Appellant's motion to compel arbitration in which they argued that the arbitration agreement should not be enforced because it is contained in an illegal usurious contract and is, therefore, void ab initio.
Buckeye, 824 So.2d at 229. The district court continued:
The trial court denied Appellant's motion to compel arbitration, relying on Party Yards, Inc. v. Templeton, 751 So.2d 121 (Fla. 5th DCA 2000), and FastFunding v. Betts, 758 So.2d 1143 *862 (Fla. 5th DCA 2000). Appellant contends the Federal Arbitration Act applies and that the trial court erred when it failed to construe the arbitration provision in a manner consistent with Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and its progeny. Appellant also contends the trial court misplaced its reliance on Party Yards and FastFunding. We agree.
Buckeye, 824 So.2d at 229-30. The Fourth District reversed the trial court's decision and held that Cardegna's challenge to the underlying contract's validity must be resolved by an arbitrator, not a trial court.

ANALYSIS
The petitioners claim that the Fourth District's holding in Buckeye conflicts with the Fifth District's decision in FastFunding, holding that arbitration could not be compelled under a contract that would be void under Florida law and that the issue of the contract's legality must be determined in Florida's courts.

FastFunding
In FastFunding, FastFunding the Company, Inc., appealed a trial court's order that denied FastFunding's motion to compel arbitration. See FastFunding, 758 So.2d at 1143. The complaint asserted that "under the guise of a payment instrument sale," FastFunding compelled the payment of unconscionable, usurious interest rates on check cashing loans, in violation of various Florida statutes. Id. at 1144. Pursuant to the arbitration clause of the contract, FastFunding moved to compel arbitration. Id. FastFunding's motion was denied by the trial court. Id.
FastFunding appealed the trial court's ruling to the Fifth District Court of Appeal, which, consistent with its recent decision in a similar case, held that the trial court properly denied FastFunding's motion to compel arbitration. The district court reasoned: "If Ms. Betts is correct in her complaint that the contract violates the usury laws, then the contract is illegal and an arbitrator could not require Ms. Betts to perform under the contract. Pursuant to Party Yards, Inc., the trial court was correct in refusing to order the parties to arbitrate Ms. Betts' claims." FastFunding, 758 So.2d at 1144.
In the earlier decision, Party Yards, Inc. v. Templeton, 751 So.2d 121 (Fla. 5th DCA 2000), the district court held that "[w]here the facts alleged by the plaintiff are sufficient to put the making of a lawful agreement at issue, the trial court must determine the validity of the agreement before compelling a party to submit to arbitration." Id. at 124. Judge Sharp, writing for the district court, reasoned:
A court's failure to first determine whether the contract violates Florida's usury laws could breathe life into a contract that not only violates state law, but also is criminal in nature, by use of an arbitration provision. This would lead to an absurd result. Legal authorities from the earliest time have unanimously held that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. Illegal promises will not be enforced in cases controlled by federal law.
Id. at 123 (citation omitted). Thus, the Fifth District concluded: "A party who alleges and offers colorable evidence that a contract is illegal cannot be compelled to arbitrate the threshold issue of the existence of the agreement to arbitrate; only a court can make that determination." Id. at 123-24. We agree with Judge Sharp's reasoning and analysis.

*863 Prima Paint

Buckeye asserts that the U.S. Supreme Court's decision in Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), supports the Fourth District's decision and requires that an arbitrator resolve Cardegna's illegality claim, because the parties agreed in the contract to be governed by the Federal Arbitration Act and the cases applying the Act.
In Prima Paint, the Supreme Court resolved the issue of "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." Id. at 402, 87 S.Ct. 1801. Having acknowledged that various courts have differed in their approach to resolving this question, the Court agreed with the approach of the Second Circuit Court of Appeals that the arbitration clause contained in a contract may be severable from the contract itself, and that "where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." Id. at 402, 87 S.Ct. 1801. In so holding, the Court looked to the express language of the United States Arbitration Act (now known as the Federal Arbitration Act (FAA)), which required a federal court to order arbitration to proceed if it determined that the making of the arbitration agreement itself or failure to comply with the arbitration agreement was not in issue. See Prima Paint, 388 U.S. at 402, 87 S.Ct. 1801. The Court reasoned that this requirement reflected the intent of Congress to provide a speedy remedy for parties who elected to resolve disputes via arbitration. Id. at 404, 87 S.Ct. 1801.
However, we conclude that the rationale of Prima Paint should not be extended to the facts of this case. There is a key distinction between the claim in Prima Paint and the claim presently before us: in Prima Paint, the claim of fraud in the inducement, if true, would have rendered the underlying contract merely voidable. In the case before us today, however, the underlying contract at issue would be rendered void from the outset if it were determined that the contract indeed violated Florida's usury laws. Therefore, if the underlying contract is held entirely void as a matter of law, all of its provisions, including the arbitration clause, would be nullified as well.
Appellate courts in other states have also distinguished Prima Paint and reached conclusions similar to those of the Fifth District in FastFunding and Party Yards, Inc. See Rosenthal v. Great Western Fin. Sec. Corp., 14 Cal.4th 394, 58 Cal.Rptr.2d 875, 926 P.2d 1061, 1074 (1996) (stating that contracts that render an agreement void ab initio are not arbitrable); R.P.T. of Aspen, Inc. v. Innovative Communications, Inc., 917 P.2d 340, 342 (Col.Ct.App.1996) (stating that "if a party asserts that the entire contract is illegal, the court must determine this threshold issue"). A number of federal courts have likewise distinguished Prima Paint and declined to extend its holding to instances where a party claims that a contract was void from its inception. See Spahr v. Secco, 330 F.3d 1266, 1272 (10th Cir.2003) (holding "that the rule announced in Prima Paint does not extend to a case where a party challenges a contract on the basis that the party lacked the mental capacity to enter into a contract"); Sphere Drake Ins. Ltd. v. All Am. Ins. Co., 256 F.3d 587, 591 (7th Cir.2001) (concluding that "as arbitration depends on a valid contract an argument that the contract does not exist can't logically be resolved by the arbitrator"); Sandvik AB v. Advent Int'l Corp., *864 220 F.3d 99, 110 n. 9 (3d Cir.2000) (stating that Prima Paint's"holding dealt strictly with fraud in the inducement of the larger contract and made no broader pronouncements regarding `void' agreements"); Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 855 (11th Cir.1992) (stating that "Prima Paint has never been extended to require arbitrators to adjudicate a party's contention, supported by substantial evidence, that a contract never existed at all"); Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136 (9th Cir.1991) (limiting Prima Paint to voidable contracts and holding that a challenge to a signatory's authority to bind plaintiffs to an agreement must be resolved by a trial court). We agree with the reasoning of these cases distinguishing Prima Paint.
We acknowledge that recently, under similar facts, the Eleventh Circuit Court of Appeals rejected the argument that a contract's legality was to be determined by a trial court, not an arbitrator. See Bess v. Check Express, 294 F.3d 1298 (11th Cir.2002). In that case, the plaintiffs also challenged the legality of a check cashing contract's arbitration clause. The Eleventh Circuit held that because there was no dispute about the plaintiffs' assent to the contract itself, the contract was presumptively valid, and any disputes, including those about the validity of the contract, were to be determined by an arbitrator. Id. at 1305. However, the case presently before us is distinguishable because Bess was expressly resolved under federal law, not state law principles. The court said: "In reaching our decision, however, we are not deciding questions of Alabama contract law; rather, we are deciding the scope of the district court's authority under 9 U.S.C. § 4, a question of federal law." Bess, 294 F.3d at 1306 n. 3 (emphasis supplied).
We conclude that Florida public policy and contract law prohibit breathing life into a potentially illegal contract by enforcing the included arbitration clause of the void contract. Florida's law has long held that contracts which are determined to be against public policy and void should not be enforced. "A contract which violates a provision of the constitution or a statute is void and illegal and will not be enforced in our courts." Harris v. Gonzalez, 789 So.2d 405, 409 (Fla. 4th DCA 2001). This Court itself long ago declared:
The inherent and inalienable right of every man to enter into contracts or refuse so to contract is not only recognized but well established. Competent persons have the utmost liberty of contracting and when these agreements are shown to be voluntarily and freely made and entered into, then the courts usually will uphold and enforce them. The general right to contract is subject to the limitation that the agreement must not violate the Federal or State Constitutions or state statutes or ordinances of a city or town or some rule of the common law.
Wechsler v. Novak, 157 Fla. 703, 26 So.2d 884, 887 (1946). As others have also noted, "Contracts in violation of statutory prohibitions are void, and issues arising under such contracts are therefore not arbitrable." R.P.T., 917 P.2d at 342 (citing 2 Martin Domke, Commercial Arbitration 8.06 (rev. ed.1995)).
In other words, there are no severable, or salvageable, parts of a contract found illegal and void under Florida law. Judge Sharp's observation in Party Yards, Inc., that a contrary holding would lead to an absurd result is right on point. We do not believe federal arbitration law was ever intended to be used as a means of overruling state substantive law on the legality of contracts.

*865 CONCLUSION
Accordingly, we hold that where a party sufficiently alleges that a contract is void for violation of Florida's usury laws, the Florida courts, and not an arbitrator, must first determine the contract's legality before a party may be required to submit to arbitration under a provision of the contract. Hence, Cardegna's claim that the underlying check cashing contract is illegal and void ab initio as being usurious must be resolved by a trial court before arbitration of any other disputes may be compelled. We approve the Fifth District's opinions in FastFunding and Party Yards, Inc., and we quash and remand Buckeye for further proceedings consistent with this opinion.
It is so ordered.
WELLS, LEWIS, QUINCE, and BELL, JJ., concur.
BELL, J., concurs specially with an opinion.
CANTERO, J., dissents with an opinion.
PARIENTE, C.J., recused.
BELL, J., specially concurring.
I agree with Justice Cantero that the issue before us is one of federal law, and in that respect I agree that the decisions of federal courts of appeals should be considered as persuasive authority on the issue. But I do not agree with the conclusion reached by Justice Cantero or the federal decisions on which he relies. Although we should carefully consider the decisions of intermediate-level federal courts on issues of federal law, we are not bound by such decisions. Until the United States Supreme Court resolves the issue, we must independently consider the federal question for ourselves. Because I disagree with the conclusions that have been reached by the federal courts cited by Justice Cantero, I join the majority's decision.

I.
I will begin by briefly restating the issue. The petitioners (hereinafter referred to collectively as "Cardegna," the named petitioner) entered into numerous check-cashing transactions (also known as "payday loans") with Buckeye Check Cashing. Cardegna brought a class action (on behalf of himself and those similarly situated) in which he argues that these check-cashing transactions were actually nothing other than usurious loans under Florida law, which would make the check-cashing contracts void ab initio and unenforceable. Buckeye sought to stay the trial court proceedings and compel arbitration of Cardegna's claims pursuant to the arbitration clause contained in the check-cashing contracts. The arbitration clause provided that
[a]ny claim, dispute, or controversy (whether in contract, tort or otherwise ... including statutory, common law, intentional tort, and equitable claims) arising from or relating to this [check-cashing] Agreement ... or the validity, enforceability, or scope of this Arbitration Provision or the entire Agreement... shall be resolved ... by binding arbitration pursuant to this Arbitration Provision.
Buckeye Check Cashing, Inc. v. Cardegna, 824 So.2d 228, 229 (Fla. 4th DCA 2002).
The language of the arbitration clause certainly was broad enough to cover the claims brought by Cardegna. The clause even goes so far as to purport to settle the very issue before us: the clause provides that even a claim relating to the validity or enforceability of the arbitration clause itself, or a claim relating to the validity or enforceability (that is, the legality) of the check-cashing agreement as a whole, will *866 be submitted to arbitration. So the scope of the arbitration clause agreed to by the parties is not in question. Nor is Cardegna's assent to the arbitration clause in question: Cardegna does not claim that he did not assent to the clause, and he does not claim to have been defrauded into giving his assent to the clause.
It is also important to note that Cardegna does not claim that the arbitration clause itself (separately, as opposed to the contract as a whole) somehow is invalid. His claim, rather, is that the contract in its entirety is invalid and unenforceable because the check-cashing transaction underlying the contract was illegal. That issue  whether the check-cashing transaction is illegal  has not yet been decided. Indeed, the issue before us here is who will (or must) decide that issue: a court or an arbitrator. The issue, in other words, is whether the trial court was bound to enforce the arbitration clause and required to compel arbitration of Cardegna's claims. The majority holds that it was not, and I agree.

II.
To explain why I agree with the majority that the trial court was not required to enforce the arbitration clause and compel arbitration of Cardegna's claims, I begin with the language of the Federal Arbitration Act (FAA). The FAA provides that
[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C. § 2 (2000). Essentially, the FAA requires that an arbitration clause be treated in the same manner as any other contractual provision: Legislatures cannot create rules, and courts cannot apply rules, that discriminate against or give a less-favored status to arbitration clauses. See, e.g., Southland Corp. v. Keating, 465 U.S. 1, 10-11, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). The FAA does not require, however, that state courts treat arbitration clauses more favorably than they would treat any other contractual provisions. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) ("[By passing the FAA, Congress] intended courts to enforce arbitration agreements into which parties had entered, and to place such agreements upon the same footing as other contracts.") (internal brackets, quotation marks, and citations omitted).
I believe the decisions cited by Justice Cantero go too far towards treating arbitration clauses as a class of "super" clauses, immune from a state's otherwise generally applicable contract law. I do not believe the FAA was intended to preempt a state's generally applicable consumer protection laws (as opposed to laws directed specifically at the validity or enforceability of arbitration clauses, either in general or in certain types of contracts, see, e.g., Southland Corp., 465 U.S. at 10, 104 S.Ct. 852), and to require the arbitration of the very legality of the underlying contract (of which the arbitration clause was a part) under a state's usury laws. The state's regulatory authority in the consumer protection arena could be severely weakened if predatory lenders are allowed to circumvent the state courts and direct to arbitration claims that their lending practices violate state law. See Joshua R. Welsh, Comment, Has Expansion of the Federal Arbitration Act Gone Too Far?: Enforcing Arbitration Clauses in Void Ab Initio Contracts, 86 Marq. L.Rev. 581, 610 (2002).
*867 If the transactions at issue here are determined by a state court not to be illegal per se, then of course any particular claims or disputes arising out of the transactions would presumably be referable to arbitration. But the question here is whether there even was an agreement to arbitrate  an enforceable agreement to arbitrate. "The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it `does not require parties to arbitrate when they have not agreed to do so.'" Equal Employment Opportunity Comm'n v. Waffle House, Inc., 534 U.S. 279, 293, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (quoting Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). Whether a valid and enforceable arbitration agreement exists is a threshold question that must be answered by the courts, and it must be answered by reference to the state's generally applicable contract law.[1] Cardegna does not dispute that he assented to the arbitration agreement; but assent alone does not make for a valid and enforceable contract. There is more to "the making of the arbitration agreement," dissenting op. at 869, than mutual assent. By examining arbitration clauses only for "assent," Justice Cantero's (and the federal circuit courts') approach does not simply treat arbitration clauses "separate[ly]" or "independently," dissenting op. at 871, but differently.
The issue of the underlying contract's legality must be determined by the courts before any claim or dispute arising out of the contract may be referred to arbitration pursuant to the contract's arbitration clause  not because we are applying a more stringent standard to the enforceability of the arbitration clause (a course of action that would violate the FAA), but because we are, as the FAA allows, applying the generally applicable "grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If, under Florida law, no contract ever existed here, then by definition no enforceable agreement to arbitrate ever existed. The dissenting opinion and the federal decisions on which it relies have elevated arbitration clauses to a more favored status, exempting them from the state's otherwise generally applicable contract law. The FAA, however, mandates only that arbitration clauses be given equal status. In this case, if a valid and enforceable contract exists, then a valid and enforceable arbitration clause exists. The problem is that we do not yet know if a valid and enforceable contract exists. I therefore concur in the majority's decision.
CANTERO, J., dissenting.
The issue in this case is not whether a check-cashing contract is void as usurious. That issue will be determined under Florida law. The issue here is who decides whether the contract is void  the arbitrator, as provided in the contract itself, or the court. That issue must be decided under federal law, specifically the Federal Arbitration Act. The majority confuses these issues. The majority also disregards the plain language of the Federal Arbitration *868 Act, fails correctly to apply the United States Supreme Court's decision in Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and either ignores or fails to distinguish the federal cases compelling arbitration in identical circumstances. I respectfully dissent.

I. The FAA and Prima Paint

Contrary to the majority's assumption, the issue in this case arises under federal, not Florida, law. As no one disputes, the arbitration agreement itself provides that it "is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1-16." The parties concede they are governed by the FAA.
Any discussion of the arbitrability of the parties' dispute should therefore begin with the plain language of the FAA  language conspicuously absent from the majority opinion. Section 2 of the FAA provides that an agreement to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2000). Section 4 of the FAA provides in pertinent part as follows:
The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.
9 U.S.C. § 4 (2000) (emphasis added). Therefore, as many courts have recognized, under the FAA the issue for a court confronted with a plaintiff seeking to avoid arbitration is whether the plaintiff is contesting the making of the arbitration agreement or the underlying contract.
Given the parties' agreement to be governed by the FAA, the district court in this case correctly recognized its task as simply to apply controlling federal law to the case at hand. See Buckeye Check Cashing, Inc. v. Cardegna, 824 So.2d 228, 230 (Fla. 4th DCA 2002); see also Jensen v. Rice, 809 So.2d 895, 899 (Fla. 3d DCA 2002) (recognizing that the FAA "supersedes inconsistent state law" and "[a]s a result, Florida courts must enforce arbitration agreements that are valid and enforceable under the [FAA], even where, as here, the arbitration agreement would not be enforceable under Florida law").
Federal law favors arbitration. As the United States Supreme Court has recognized, the purpose of the FAA is to override the judiciary's reluctance to enforce arbitration agreements. See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 474, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). The FAA places such agreements on the same footing as other contracts. Id."The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem. Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Under the FAA, questions of arbitrability "must be resolved with a healthy regard for the federal policy favoring arbitration," even when general state law principles of contract interpretation are applied. Volt Info. Scis., 489 U.S. at 475-76. "The [FAA] establishes that, as a matter of federal law, any doubts concerning the *869 scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone, 460 U.S. at 24-25, 103 S.Ct. 927.
In concluding that the check-cashing agreement's enforceability should be decided in arbitration, the district court relied in part on Prima Paint, where the United States Supreme Court addressed "whether the federal court or an arbitrator is to resolve a claim of `fraud in the inducement,' under a contract governed by the [FAA]." 388 U.S. at 396-97, 87 S.Ct. 1801; see 824 So.2d at 230. Citing to section 4 of the Act (quoted above), which requires arbitration to go forward if "the making of the agreement for arbitration or the failure to comply therewith is not in issue," the Court concluded that the statute itself answers the question. 388 U.S. at 403, 87 S.Ct. 1801. That is, "the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." Id. at 404, 87 S.Ct. 1801 (emphasis added). The Court held that a court may adjudicate a claim of "fraud in the inducement of the arbitration clause itself," id. at 403-04, 87 S.Ct. 1801, because then the issue is the "making" of the arbitration agreement. Thus, a court "may consider only issues relating to the making and performance of the agreement to arbitrate." Id. at 404, 87 S.Ct. 1801 (emphasis added). As the Court stated:
Accordingly, if the claim is fraud in the inducement of the arbitration clause itself  an issue which goes to the "making" of the agreement to arbitrate  the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.... We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

Id. at 403-04, 87 S.Ct. 1801 (footnote omitted) (emphasis added).
Applying these principles, the Court held that because the fraud claim did not specifically address the arbitration agreement and the arbitration clause was sufficiently broad to encompass the dispute, including "legal" issues, the parties must proceed to arbitration. Id. at 406-07, 87 S.Ct. 1801.
The import of Prima Paint, then, is that under the FAA, arbitration agreements or arbitration clauses contained in contracts are treated separately from the underlying contracts. The FAA expressly limits courts to determining whether the making of the arbitration agreement itself  not the underlying contract  is disputed. The only exception, as explained later, is where a party contests its very assent to the underlying contract, and therefore to the arbitration agreement as well.
The majority violates the FAA's express directive. It dismisses Prima Paint as applicable only to voidable  as opposed to void  contracts. Nothing in that opinion makes that distinction, and even though the issue in that case involved a voidable contract  it was allegedly fraudulently induced  the Court did not limit its holding. Cf. Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 110 n. 9 (3d Cir.2000) (noting that the dissenting opinion in Prima Paint"impl[ies] that the majority rejected the void/voidable distinction"). Nor can its holding logically be limited to such contracts because the Court interpreted the plain language of the FAA, which does not exempt from arbitration allegations that the underlying contract is void. The Court did acknowledge a distinction  apparent *870 in the statute itself  but not between void and voidable contracts. Such a distinction is arbitrary and totally disconnected from the statutory language. Rather, the Court distinguished between issues concerning the making of the underlying contract, which are arbitrable, and issues concerning the making of the arbitration agreement, which are not.

II. Federal Appellate Cases on Point
In the last three years no fewer than three federal courts of appeals have decided the precise issue we confront today  whether, under the FAA, the issue of whether a check-cashing transaction is void as usurious is for the court or the arbitrator to decide. Every one unanimously has held that the issue is one for the arbitrators. Nevertheless, the majority fails to distinguish one of them and simply ignores the others.
Most recently, the Eleventh Circuit Court of Appeals decided this issue. In Bess v. Check Express, 294 F.3d 1298, 1304 (11th Cir.2002), the plaintiffs had signed deferred payment transactions containing arbitration agreements governed by the FAA. They filed a class action suit against Check Express, alleging that the transactions constituted usurious loans under state law. Id. at 1301-02. When Check Express invoked the arbitration clause, the plaintiffs contended that the court, not an arbitrator, must decide the legal question of whether the transactions were void as usurious. The court recognized that its task was not to determine the legality of the contract, but simply to address the threshold question of who should decide the issue, the arbitrator or the court. Id. at 1304. Noting that the FAA limits courts to the issue of the "making of the arbitration agreement," the court concluded that it must determine whether the allegation that the underlying contract was illegal placed at issue the making of the arbitration agreement. Id. The court emphasized that the plaintiffs did not dispute having assented to the underlying contracts. The court thus concluded that the question of the legality of the contract was for the arbitrator because the case fell "within the `normal circumstances' ... where the parties have signed a presumptively valid agreement to arbitrate any disputes, including those about the validity of the underlying transaction." Id. at 1306 (citing Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 854 (11th Cir.1992)).
The majority acknowledges Bess, but distinguishes it on the purported ground that the federal court was deciding an issue of federal law, while this Court is deciding an issue of state law. Majority op. at 864. That conclusion is blatantly wrong.
The majority cites a footnote in which the Eleventh Circuit stated the following in pertinent part:
Colburn contends that we are bound by Alabama law in deciding defenses to the arbitration agreement, and therefore, [Alabama case law] requires that the void ab initio argument be decided by the court. In reaching our decision, however, we are not deciding questions of Alabama contract law; rather we are deciding the scope of the district court's authority under [the FAA], a question of federal law.
Id. at 1306 n. 3.
The identical situation exists here. Just as the Eleventh Circuit did not decide questions of Alabama law, we are not deciding questions of Florida law. Specifically, we are not deciding whether the check-cashing contract is usurious. The sole issue before both courts is the same: who decides the legality of the underlying contract? The issue here, as in Bess, is one of federal law because the FAA governs *871 the arbitration agreement. Bess cannot be distinguished.
The Fourth Circuit Court of Appeals also has addressed the precise claim presented here. In Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 636 (4th Cir.2002), cert. denied, 537 U.S. 1087, 123 S.Ct. 695, 154 L.Ed.2d 631 (2002), the court considered whether the plaintiff's contention that a "deferred deposit transaction," such as the one in this case, was a usurious loan void under Maryland law was subject to arbitration. Noting that the plaintiff did not dispute that the FAA governed the arbitration agreement or that her claim fell within the scope of the arbitration agreement, the court applied Prima Paint and the FAA's requirement that the party contesting arbitration must allege grounds relating to the arbitration clause, not the underlying contract. Id. at 636. The court concluded that under the severability doctrine of Prima Paint, arbitration must proceed because the plaintiff's "allegations of usurious rates of interest ... d[id] not relate specifically to the Arbitration Agreement [nor did] they underlie a claim that [the plaintiff] failed to assent to the terms of the ... Agreement." Id. at 637.
Finally, in Burden v. Check Into Cash of Kentucky, LLC, 267 F.3d 483, 486-87 (6th Cir.2001), cert. denied, 535 U.S. 970, 122 S.Ct. 1436, 152 L.Ed.2d 380 (2002), the plaintiffs also alleged that the check cashing agreements they signed were usurious in violation of state law and therefore void. The court concluded that because the plaintiffs admitted assenting to the agreements, the challenge to the legality of the underlying contract constituted a "challenge [to] the substance, rather than the existence, of the loan agreements." Id. at 490; accord Furgason v. McKenzie Check Advance of Indiana Inc., No. IP00-121-C H/G, 2001 WL 238129 (S.D.Ind. Jan.3, 2001) (holding that a plaintiff cannot avoid arbitration by alleging or showing the illegality of a so-called payday loan contract); see also Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd., 1 F.3d 639, 642 (7th Cir.1993) (holding that under Prima Paint the claim that the underlying contract should be rescinded because it violated state law was subject to arbitration under the broad scope of the contract's arbitration clause).
We should follow Bess, Snowden, and Burden, which considered the identical issue under identical facts and held that, under the plain language of the FAA, the issue of whether a check-cashing transaction is usurious must be determined by the arbitrators. These decisions are persuasive on matters of federal law. See State v. Dwyer, 332 So.2d 333, 335 (Fla.1976) (stating that federal court rulings are persuasive).
Justice Bell, specially concurring, agrees with me that "the issue before us is one of federal law" and that "the decisions of federal courts of appeals should be considered as persuasive authority." Concurring op. at 864-65. He is not persuaded by those decisions, however, because he thinks they "go too far towards treating arbitration clauses as a class of `super' clauses, immune from a state's otherwise generally applicable contract law." Concurring op. at 866. I disagree with Justice Bell for two reasons.
First, the federal circuit courts have treated arbitration clauses not as a class of "super" clauses, but as a class of separate clauses  separate, that is, from the other clauses in a contract. Under the reasoning of the federal courts, arbitration clauses are not immune from state contract law. They are simply evaluated independently of the rest of the contract under "the state's otherwise generally applicable contract law." Concurring op. at 866.
*872 Second, although it is true that Bess, Snowden, and Burden are only persuasive, they are all based on Prima Paint, which is binding. All three cases reached the same conclusion on similar facts because they each found Prima Paint indistinguishable, as I do, and therefore controlling. See Bess, 294 F.3d at 1306 (stating that, under the holding of Prima Paint, courts may only "consider issues relating to the making and performance of the agreement to arbitrate"); Snowden, 290 F.3d at 637 (stating that the independent evaluation of arbitration clauses is a "rule ... derived from the Supreme Court's opinion in Prima Paint"); Burden, 267 F.3d at 490 (finding no logical distinction between Prima Paint and cases where a party "subsequently discover[s] that certain terms of the contract may violate state law"). The majority's reasoning contradicts not just the federal circuit court cases, but also Prima Paint.

III. Federal Cases Based on Different Circumstances
Instead of following the federal cases that have decided this identical issue under identical facts, the majority relies on other cases that considered different attacks on different types of contracts. In particular, the majority cites cases refusing to refer issues to arbitration. Majority op. at 863-64. As the Sixth Circuit emphasized in Burden, 267 F.3d at 489, however, in those cases the question was not whether a party assented to a contract that later was alleged to violate state law. 267 F.3d at 490. Rather, in each case, the complaining party alleged that because of some defect in signatory power, no contract ever was formed. See, e.g., Sandvik, 220 F.3d at 112 (holding that where a party claimed that the signee lacked authority to bind it to the contract containing the arbitration clause, "the very existence of [the] agreement [was] disputed" and the court must resolve the threshold question of whether an arbitration agreement exists); Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc., 925 F.2d 1136, 1138, 1144 (9th Cir.1991) (holding that the court, not the arbitrator, must decide whether the signatory had authority to bind the plaintiffs to contracts containing arbitration clauses); Spahr v. Secco, 330 F.3d 1266, 1273 (10th Cir.2003) (holding that a claim that the signatory lacked the mental capacity to enter into the contract goes to the making of both the contract and the arbitration agreement); Sphere Drake Ins. Ltd. v. All American Ins. Co., 256 F.3d 587, 590-91 (7th Cir.2001) ("A person whose signature was forged has never agreed to anything. Likewise with a person whose name was written on a contract by a faithless agent who lacked authority to make that commitment. This is not a defense to enforcement, as in Prima Paint; it is a situation in which no contract came into being[.]").
In Bess, the Eleventh Circuit similarly distinguished its earlier decision in Chastain v. Robinson-Humphrey Co., 957 F.2d 851 (11th Cir.1992). In Chastain, the plaintiff never personally signed the customer agreements at issue, and thus she contended that she was not bound by the arbitration provisions within them. 957 F.2d at 853. The court acknowledged that "parties cannot be forced to submit to arbitration if they have not agreed to do so." Id. at 854 (citing Volt Info. Scis., Inc., 489 U.S. at 478, 109 S.Ct. 1248). Thus, "[u]nder normal circumstances, an arbitration provision with a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration." 957 F.2d at 854. The court found the case before it to be the "rare" case in which "the very existence of any agreement, including the existence of an agreement to arbitrate" was at issue. Id. Under those *873 facts, "there [wa]s no presumptively valid general contract." Id. If a party did not sign the underlying contract, then the party may not have agreed to arbitration. Thus, the making of the arbitration agreement was at issue, and under the FAA a court, not an arbitrator, should decide the question. Id. at 855.
In Bess, the Eleventh Circuit noted both the distinctive facts of Chastain and its narrow holding. 294 F.3d at 1305. The court explained that "the focus of the court's decision in Chastain ... was on the question of assent, i.e., whether the parties mutually had agreed to the contracts," and contrasted the claim before it that the deferred payment contracts violated state law:
At bottom, Colburn challenges the content of the contracts, not their existence. Indeed, unlike the contracts in Chastain, both the arbitration agreement and the deferred payment contracts were signed by Colburn, and there is no question about Colburn's assent to those contracts. Thus, this case falls within the "normal circumstances" described in Chastain, where the parties have signed a presumptively valid agreement to arbitrate any disputes, including those about the validity of the underlying transaction. Therefore, the issue raised by Colburn  whether the deferred payment transactions are void as illegal  is one for the arbitrator, not the court.
294 F.3d at 1305-06 (emphasis added).
Thus, the distinction in the cases is not between voidable contracts (which are arbitrable) and void contracts (which are not), as the majority finds. Rather, it is between contracts to which the plaintiff admittedly assented, but now claims are either void or voidable, and contracts to which the plaintiff gave no assent. If no contract was formed, then the arbitration agreement, which was part of that contract, was not formed, either. Courts must determine this threshold issue. The plaintiffs in this case, however  and in all the cases involving check-cashing transactions  do not allege that no contract was formed. They admit assenting to both the arbitration agreements and the underlying contracts. Rather, they argue that the contracts were usurious. Therefore, the "making of the agreement for arbitration" is not at issue, and under the FAA the arbitrators, not the courts, must decide the issue.

IV. The Majority's Reliance on Party Yards

The majority also relies on and approves Party Yards, Inc. v. Templeton, 751 So.2d 121 (Fla. 5th DCA 2000). The court in that case, however, did not have the benefit of the three federal cases I have discussed  Bess, Snowden, and Burden  which are precisely on point and dictate the outcome here. Moreover, the court's analysis is based on the presumption that the contract at issue was illegal (an analysis later rebutted). See 751 So.2d at 123 ("The issue here ... is whether a contract that violates state law and is criminal in nature, can be referred to arbitration.").[2] The court expressed the unwarranted fear that without a court determination of the legality of the now-presumptively illegal contract, the court "could breathe life" into an illegal contract by sending the case to arbitration. 751 So.2d at 123. This simply is not so.
In Lawrence v. Comprehensive Business Services Co., 833 F.2d 1159 (5th Cir.1987), the Fifth Circuit rejected a similar argument. *874 The plaintiffs claimed that their franchise agreement, which contained an arbitration clause, was illegal under Texas state law and that if the court ordered arbitration it would "`in essence ... effectuate an illegal agreement.'" Id. at 1162. The court noted that the "argument presumes that the contract is illegal and that presenting the dispute to the arbitrator somehow effectuates an illegal contract. The flaw in the argument is that the legality of the contract has not yet been decided." Id. The court also rejected the plaintiffs' claim that the issue was one of law to be decided by a court because they "d[id] not contend that the agreement did not allow the arbitrator to decide purely legal questions." Id. Because there was no attack on the arbitration clause itself, the court held that "Prima Paint requires that their claim of illegality be arbitrated pursuant to the contract." 833 F.2d at 1162. Finally, the court rejected the claim that enforcing the arbitration provision of the allegedly illegal contract would contravene state law, saying that the "argument forgets that the arbitrability of an issue under the Federal Arbitration Act is a matter of federal law." Id.
Contracts are presumed valid until held to be illegal. In National Railroad Passenger Corp. v. Consolidated Rail Corp., 892 F.2d 1066, 1070 (D.C.Cir.1990), the court held it error to treat an arbitration clause as unenforceable "merely because the substantive contract may  if the district court is correct about public policy  be unenforceable." Citing the FAA's sole exception to arbitration, a "flaw in the formation of the agreement to arbitrate," the court explained its holding as follows:
For a court to intervene before the arbitrator has determined what the contract means, and what it requires in the particular circumstances of their dispute, because he may determine that it requires the performance of an unlawful act, prematurely disrupts the system of private ordering upon which "public policy"  as declared in the Arbitration Act and in the Supreme Court cases liberally interpreting it  places maximum possible reliance....
In sum, if parties have validly agreed to submit a dispute to arbitration, we see no reason not to enforce that agreement. If the arbitrator construes the contract so as to require someone to commit an illegal act, a court can then refuse to enforce the arbitrator's decision. A court cannot, however, bypass the arbitration process simply because a public policy issue might arise.
Id. at 1071 (emphasis added).
The majority here commits the same error as did the court in Party Yards. The majority holds that "an arbitration provision contained in a contract which is void under Florida law cannot be separately enforced while there is a claim pending in a Florida trial court that the contract containing the arbitration provision is itself illegal and void ab initio." Majority op. at 861 (emphasis added). Thus, the majority assumes the illegality of the contract in determining that a court should decide the legality of a contract. Under the parties' arbitration agreement, however, that issue is for the arbitrator.
Finally, the court in Party Yards relied on cases such as Three Valleys, 925 F.2d at 1136, and Chastain, 957 F.2d 851. As explained above, in each of these cases the parties' assent to the contract was at issue. Here, on the other hand  and in cases such as Bess, Snowden, and Burden  the parties assented both to the contracts and to the arbitration clauses.
At their heart, Party Yards and the majority opinion evince a basic distrust of arbitration and place the court as jealous *875 guardian of the determination of legal issues. By endorsing Party Yards, the majority not only disregards controlling federal law and the federal preference for enforcing arbitration clauses, but it has created a new analysis for arbitration claims. Under the express terms of the FAA, a party opposed to arbitration must challenge the making of the arbitration agreement itself. Under the majority's reasoning, the opponent need only allege that the underlying contract violates a state statute or public policy in a way that renders it void. Because the majority's decision contradicts federal law favoring arbitration and fails to follow federal cases directly on point, I respectfully dissent.
NOTES
[1] There is, of course, a somewhat troubling "circularity" to this reasoning. After all, we do not yet know if the check-cashing transactions are illegal under Florida law, so we do not know if the contract here really was void ab initio. Yet the dissenting position itself rests on a sort of circular reasoning. The dissent would compel the arbitration of the legality claim on the ground that until that claim is resolved, there are no grounds for invalidating the arbitration clause. But if the arbitrator were to conclude that the contracts were illegal and unenforceable, we then would have enforced an unenforceable contract.
[2] The Fifth District has since decided that deferred payment transactions such as those involved in Party Yards and in this case are not usurious. See Betts v. Ace Cash Express, Inc., 827 So.2d 294, 297 (Fla. 5th DCA 2002).